**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA MCNEARY-CALLOWAY,
COLIN MACKINNON, TERRIE
MACKINNON, ANDREA NORTH and
SHEILA M. MAYKO, individually and on
behalf of all others situated,

          Plaintiffs,

v.

JP MORGAN CHASE BANK, N.A. and
CHASE BANK USA, N.A.,

          Defendants.

_____/

Case No. C-11-03058 JCS

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS [Docket No. 48]**

## I.       INTRODUCTION

Plaintiffs Patricia McNeary-Calloway, Colin MacKinnon, Terrie McKinnon, Andrea North, and Sheila M. Mayko (collectively "Plaintiffs") initiated this putative class action on June 20, 2011, challenging Defendants JPMorgan Chase, N.A. and Chase Bank USA, N.A.'s (together "Defendants," or "Chase") practice of purchasing "force-placed" hazard insurance policies for home mortgage borrowers who fail to maintain adequate insurance. Defendants now bring a Motion to Dismiss Plaintiffs' First Amended Complaint ("the Motion"). Plaintiffs oppose the Motion. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Motion to Dismiss is GRANTED in part and DENIED in part.

## II.      REQUESTS FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of three documents that are matters of public record. Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Defs.' RJN"), 1-2. Plaintiff has not objected to Defendant's request or

challenged the authenticity of any of the attached documents.  Accordingly, the Court takes judicial notice of these records pursuant to Rule 201 of the Federal Rules of Evidence.  Further, the Court may consider these documents, along with the allegations in Plaintiffs' complaint, on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Evidence. *See Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 464 F. Supp. 2d 938, 941 (N.D. Cal. 2006).

Plaintiffs also request that the Court take judicial notice of three documents that are matters of public record.  Plaintiffs' Request for Judicial Notice ("Pls.' RJN").  Defendants have not objected to Plaintiffs' request or challenged the authenticity of any of the attached documents. Accordingly, the Court takes judicial notice of these records pursuant to Rule 201 of the Federal Rules of Evidence.

## III.    BACKGROUND

### A.    Factual Background[1]

Defendants JPMorgan Chase and Chase Bank originate mortgage loans and acquire loans from other lenders.  Plaintiffs' First Amended Complaint ("FAC"), ¶ 58.  Prior to its merger into JPMorgan, Chase Home Finance acted as the servicer to these loans. *Id.*  Each loan is secured by a deed of trust on the underlying property. *Id.*  In order to protect its interest in the secured property, mortgage loan contracts typically allow the lender or third party servicer to "force-place" hazard insurance when the homeowner fails to maintain such insurance. *Id.* at ¶ 60.  Plaintiffs allege that Defendants have purchased force-placed insurance ("FPI") "from insurers that provide a financial benefit to Defendants and/or their affiliates and at rates that far exceed borrower-purchased hazard insurance (while providing substantially less coverage)." *Id.* at ¶ 4.  Additionally, Plaintiffs maintain that FPI policies are often improperly backdated to collect premiums for periods that have already passed. *Id.* at ¶ 2.  Such policies can also be duplicative, where FPI coverage becomes effective immediately following the termination of the borrower's policy, because the lender is

---

[1] The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996) (on motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the facts alleged in the complaint are true).

**United States District Court**
For the Northern District of California

1  temporarily protected under the Lender's Loss Payable Endorsement (LLPE) in the borrower's

2  policy. *Id.* at ¶ 86.

3        Plaintiffs bring this action on behalf of a purported nationwide class consisting of all persons

4  whose hazard insurance was force-placed by Defendants beginning June 16, 2007. *Id.* at ¶ 123.

5  Plaintiffs' action also includes two purported subclasses,  a California subclass and a New Jersey

6  subclass. *Id.*

7        The specific allegations concerning the Plaintiffs' FPI policies are as follows:

8        (1) **Patricia McNeary-Calloway**

9        On or about September 13, 2007, Ms. McNeary-Calloway and her husband, James B.

10  Calloway, Jr., obtained a $540,000 refinance mortgage loan from Chase Bank, secured by their

11  primary residency in Oakland, California. *Id.* at ¶ 18.  In connection with their mortgage loan, Ms.

12  McNeary-Calloway and her husband purchased a hazard insurance policy from California Casualty

13  with an annual premium of $1,640. *Id.* at ¶ 19.

14        On July 4, 2009, Mr. Calloway passed away due to complications from a serious illness. *Id.*

15  at ¶ 20.  During Mr. Calloway's illness and following his death, Ms. McNeary-Calloway faced

16  financial difficulties and was unable to make her hazard insurance payments. *Id.*  Her policy lapsed

17  effective August 26, 2009. *Id.*  On or about January 8, 2010, Chase Home Finance purchased a

18  one-year insurance policy with American Security Insurance Company ("ASIC"), backdated to

19  August 26, 2009, with an annual premium of $4,233, charged to Ms. McNeary-Calloway's escrow

20  account. *Id.* at ¶ 21.  The policy was backdated, despite the fact that there was no damage to the

21  property or claims arising out of the property for the lapse period. *Id.*  The ASIC policy provided

22  substantially less coverage than Ms. McNeary-Calloway's previous policy. *Id.* at ¶ 22.

23        In September 2010, Ms. McNeary-Calloway received a letter from Chase Home Finance,

24  stating that, effective August 26, 2010, Chase Home Finance had renewed the FPI policy for another

25  year at the same rate. *Id.* at ¶ 24.  Following the receipt of this letter, Ms. McNeary-Calloway

26  obtained her own insurance policy from Farmers Insurance Group with an annual premium of

27  $1,103 and an effective date of September 1, 2010. *Id.* at ¶ 25.  After receiving notice of this policy,

28  Chase Home Finance sent Ms. McNeary-Calloway a letter stating that it canceled the FPI policy, but

1  charged her escrow account for retroactive coverage for the period extending from August 26, 2010

2  to September 1, 2010.  *Id.* at ¶ 26.

3      (2) **Colin and Terrie MacKinnon**

4      Plaintiffs Colin and Terrie MacKinnon ("the MacKinnons") reside in San Diego, California,

5  having purchased their home in 1994 with a loan from Royal Bank of Canada.  *Id.* at ¶ 27.  In July

6  2005, the MacKinnons refinanced through an online mortgage broker and Chase Home Finance

7  purchased the loan very shortly after closing.  *Id.*  The MacKinnons had hazard insurance through

8  AAA with an annual premium of $440.  *Id.*  Unbeknownst to them, the MacKinnons' homeowners'

9  insurance policy lapsed on July 20, 2008.  *Id.* at ¶ 28.  The MacKinnons believe that the lapse was

10  due to a computer error on the part of AAA.  *Id.*

11      On November 5, 2010, Chase Home Finance sent the MacKinnons a notice stating that an

12  FPI policy had been purchased from ASIC with an annual premium of $1,782, and backdated to

13  cover the period between August 18, 2009 and August 18, 2010.  *Id.* at ¶ 29.  The MacKinnons do

14  not recall seeing the notice at the time.  *Id.* at ¶ 30.  They later became aware of the lapse in

15  coverage in December 2010 and immediately reinstated their AAA policy, effective December 10,

16  2010.  *Id.*

17      In January 2011, the MacKinnons noticed two charges to their escrow account for FPI.  *Id.* at

18  ¶ 31.  Specifically, on October 27, 2010, Chase Home Finance charged the MacKinnons a premium

19  of $1,782 for a FPI policy backdated to cover the period from August 18, 2009 to August 18, 2010.

20  *Id.*  Three days later, on October 30, 2010, Chase Home Finance charged the MacKinnons a

21  premium of $1,782 for an FPI policy backdated to cover the period from August 18, 2010 to August

22  18, 2011.  *Id.*  Once Chase Home Finance received proof of the MacKinnons' insurance policy

23  reinstated as of December 10, 2010, it provided a pro-rated refund of $1,226 for the period of

24  December 10, 2010 through August 18, 2011.  *Id.* at ¶ 32.  Accordingly, the MacKinnons were

25  charged a total of at least $2,338 for FPI policies.  *Id.*  There was no damage to the property or

26  claims arising out of the property for the lapse period.  *Id.* at ¶ 33.

27      (3) **Andrea North**

28      Plaintiff Andrea North resides in Yorba Linda, California.  *Id.* at ¶ 35.  On or about April 3,

4

1  2008, Ms. North obtained a loan from JPMorgan for the purchase of her home.[2]  *Id.*  Ms. North

2  obtained a homeowner's insurance policy from State National Insurance Co. with an annual

3  premium of $1,084.  *Id.*  However, after Ms. North became seriously ill in 2009, her homeowner's

4  insurance

5  policy was canceled effective April 23, 2009, for non-payment of the premium.  *Id.*

6         On December 8, 2009, Chase Home Finance charged Ms. Woo and Ms. North $5,377 for a

7  FPI policy from ASIC, backdated to April 23, 2009.  *Id.* at ¶ 36.  Ms. North's FPI policy was

8  backdated, despite the fact that there was no damage to the property or claims arising out of the

9  property for the lapse period.  *Id.*  On May 2, 2010, Chase Home Finance sent Ms. Woo and Ms.

10  North a letter stating that it had renewed the policy for another $5,377, effective April 23, 2010.  *Id.*

11  at ¶ 37.  Subsequently, Ms. Woo and Ms. North obtained their own insurance policy from Towers

12  Select Insurance Co., effective June 8, 2010, for an annual premium of $1,134.  *Id.* at ¶ 38.

13         Chase Home Finance canceled the second FPI policy effective June 8, 2010, but did not

14  refund the initial $5,377 for the first FPI policy or the amount charged for the second FPI policy in

15  effect from April 23, 2010 until June 8, 2010. *Id.* at ¶ 39.

16         (4) **Sheila M. Mayko**

17         Plaintiff Sheila M. Mayko resides in Riverside, New Jersey.  *Id.* at ¶ 40.  On or about

18  January 11, 2002, Ms. Mayko purchased a residence at 200 Heulings Avenue, Riverside, NJ with a

19  loan obtained from Chase Bank.  *Id.*  On or about June 30, 2003, Ms. Mayko obtained a $135,209

20  refinance loan with Chase Bank secured by the property at 200 Heulings Avenue.  *Id.*

21         In January 2010, Ms. Mayko missed the 2010 hazard insurance premium payment of $1,064.

22  *Id.* at ¶ 42.  On January 19, 2010, Ms. Mayko's hazard insurance company, Preferred Mutual

23  Insurance Company, sent a notice of cancellation stating the policy would be cancelled effective

24  February 23, 2010 if payment was not made.  *Id.* at ¶ 43.  On January 26, 2010, Chase paid Ms.

25  Mayko's annual premium of $1,064 to Preferred Mutual from Ms. Mayko's escrow account, leaving

26  that account with a negative balance.  *Id.* at ¶ 44.

---

[2]  Ms. North's mother, Helen Woo, was a co-signer on the note, but was not a party to the mortgage contract.

United States District Court

For the Northern District of California

1   Chase subsequently canceled Ms. Mayko's existing policy and force-placed coverage with

2   another carrier. *Id.* at ¶ 46. On July 23, 2010, Chase Home Finance sent Ms. Mayko a letter

3   informing her that it had force-placed a one-year homeowner's insurance policy on her property with

4   ASIC at a cost of $3,177.34. *Id.* at ¶ 47. The insurance was backdated to May 13, 2010. *Id.* at ¶ 50.

5   The insurance premium payment was charged against Ms. Mayko's escrow account. *Id.* at ¶ 47.

6   The FPI policy supplied substantially less coverage than Ms. Mayko's previous policy in that it

7   protected only Chase Home Finance and covered only the structure of the home. *Id.* at ¶ 48.

8   Additionally, Mayko's dwelling was insured for the same amount under the FPI policy as it was

9   under Ms. Mayko's existing policy ($328,000). *Id.* at ¶ 49.

10   Plaintiffs assert the following seven claims in their FAC:

11   (1) **Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607**: Plaintiffs

12   claim that Defendants violated RESPA's prohibition on accepting fees, kickbacks, or things of value

13   in two ways. First, pursuant to "captive reinsurance arrangements,"[3] Defendants' subsidiary

14   received an "unlawfully excessive" split of borrowers' FPI premiums. *Id.* at ¶¶ 65, 140. Second,

15   

16   [3] Under a "captive reinsurance arrangement," according to Plaintiffs, the provider of the FPI
policy agrees to reinsure the FPI policy with a subsidiary, or "captive reinsurer," of the referring

17   servicer. FAC, at ¶ 67. In exchange for receiving a portion of the borrowers' premiums, the subsidiary
is supposed to assume a portion of the insurer's risk of loss. *Id.* Defendants purportedly agreed to take

18   on this risk under an "excess of loss" captive reinsurance arrangement. *Id.* at ¶ 102. Plaintiffs, however,
allege that the excess of loss arrangement "does not necessarily result in any actual 'losses' being shifted

19   to the reinsurer." *Id.* at ¶ 99. Plaintiffs explain why this is so as follows:

20   [I]n an excess of loss reinsurance arrangement, the reinsurer is liable only for a
specified corridor or "band" of loss, with the losses below and above the band being

21   covered by the force-placed insurance provider. In other words, the reinsurer is liable only
for claims, or a percentage thereof, above a particular point, commonly known as an

22   attachment or entry point, and subject to a ceiling, commonly known as a detachment or
exit point. Under this structure, then, the reinsurer's liability begins, if ever, only when

23   the force-placed insurance provider's incurred losses and expenses reach the attachment
point and ends when such losses reach the detachment point.

24   The likelihood of the reinsurer experiencing any real losses under this arrangement
depends not only on the amount of losses paid by the force-placed insurer (i.e. whether the

25   amount of claims paid by the insurer ever reaches the band where the reinsurer's
responsibility to pay claims attaches) but also on whether the reinsurance agreement

26   between the reinsurer and the force-placed insurance provider exposes the reinsurer to any
real possibility that it may be required to contribute its own money when called upon by

27   the force-placed insurance provider to pay for its share of losses.

28   *Id.* at ¶¶ 100-101.

...

1  Defendants unlawfully received commissions from FPI providers in return for agreeing to

2  exclusively force-place insurance with those providers.  *Id.* at ¶¶ 66, 141.  Under the commission

3  arrangement, "the provider of the force-placed insurance policy pays a commission either directly to

4  the servicer or to a subsidiary posing as an insurance 'agent.'  Typically, under such an arrangement,

5  commissions are paid to a 'licensed insurance agency' that is simply an affiliate or subsidiary of the

6  servicer and exists only to collect the kickbacks or commissions collected from the force-placed

7  insurance provider."  *Id.* at ¶ 66.  These reinsurance and commission arrangements, totaling as much

8  as forty percent of the premiums paid by homeowners, were not for services actually furnished or

9  performed, and/or exceeded the value of such services.  *Id.* at ¶¶ 65, 142.

10        Plaintiffs claim they were harmed by the unlawful kickback scheme because the "kickbacks

11  and unearned fees unnecessarily and artificially inflate settlement service charges," and thus

12  Plaintiffs have been overcharged.  *Id.* at ¶ 146.  Even if Plaintiffs weren't overcharged, "RESPA

13  section 8(d)(2) indicates that damages are based on the settlement service amount with no

14  requirement [of an] overcharge."  *Id.* at ¶ 145.

15        (2) **Breach of the Implied Covenant of Good Faith and Fair Dealing**: Plaintiffs claim that

16  the mortgage contracts between Plaintiffs and Defendants, to the extent those contracts allow

17  Defendants to force-place insurance, forbid Defendants from force-placing insurance "capriciously"

18  or in "bad faith."  *Id.* at ¶ 152.  Plaintiffs claim Defendants breached this duty of good faith in at

19  least the following respects:

20        •  "Failing to make any effort whatsoever to maintain borrowers' existing insurance

21           policies and, instead . . . [,] forcing borrowers to pay for insurance from providers of

22           Defendants' choice;"

23        •  Entering into arrangements with FPI providers whereby Defendants received

24           unlawful kickbacks and commissions, resulting in Defendants overcharging Plaintiffs

25           for the cost of insurance;

26        •  "Failing to seek competitive bids [for FPI policies] on the open market or otherwise

27           making good faith efforts to reasonably exercise their discretion;"

28

United States District Court

For the Northern District of California

7

United States District Court

For the Northern District of California

- • "Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiffs and Class and misrepresenting the reason for the cost of the policies;"
- • "Backdating force-placed insurance policies to cover time periods which have already passed and for which there was already absolutely no risk of loss . . . due to the passing of time and/or the lender's coverage under a Lender's Loss Payable Endorsement;"
- • Misrepresenting borrowers' obligation to pay for such backdated coverage;
- • "Failing to provide borrowers with any opportunity whatsoever to opt out of having their force-placed insurance policies provided by an insurer with whom Defendants had a commission and/or captive reinsurance arrangement."

*Id.* at ¶ 153.  Plaintiffs claim they have suffered damages as a result of the above breaches.  *Id.* at ¶ 154.

(3) **Breach of Contract**: Plaintiffs claim that Defendants have breached their obligation in the mortgage contracts to exercise their discretion to force-place insurance "in a reasonable manner." *Id.* at ¶ 158.  Specifically, Defendants engaged in three practices that constitute such a breach of the contract: (1) "requiring borrowers to pay amounts for insurance coverage that exceed the amounts necessary to protect the mortgagee's interest in the secured property;" (2) backdating FPI policies to cover periods of time where no loss occurred; and (3) "requiring borrowers to pay for FPI policies despite the existence of a Lender's Loss Payable Endorsement . . . ." *Id.* at ¶ 159.  Plaintiffs claim they were damaged as a result of Defendants' breach.  *Id.* at ¶ 161.

(4) **Unlawful Business Practices Under Cal. Bus. & Prof. Code §§ 17200 *et seq*.**: Plaintiffs allege that Defendants' actions and business practices are unfair, unlawful, and/or fraudulent under Section 17200.  Plaintiffs base their UCL claim on Defendants' actions and practices as described in their RESPA, breach of the implied covenant, and breach of contract claims.  *Id.* at ¶ 166.  Plaintiffs claim they have lost money or property as the result of Defendants' conduct.  *Id.* at ¶ 167.  Plaintiffs seek damages, disgorgement of profits, restitution, and an injunction preventing Defendants' conduct.  *Id.* at ¶ 168.

United States District Court

For the Northern District of California

(5) **Violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §
56:8-2**: Plaintiffs claim that Defendants have engaged in "unconscionable acts and practices," as
described in the preceding claims, in violation of the NJCFA. *Id.* at ¶ 172.  Plaintiffs claim that such
practices are unconscionable because "they are unethical, immoral, oppressive, and harmful and
depart from the standard of good faith, honesty . . . and fair dealing established under the NJCFA."
*Id.* at ¶ 171.  Further, "Defendants' conduct was deceptive and fraudulent, concealing numerous
material facts and misrepresenting others." *Id.*  Plaintiffs have suffered damages as a result of this
conduct. *Id.*  Plaintiffs seek damages, treble damages, restitution, injunctive relief, and attorney's
fees, among other forms of relief. *Id.* at ¶ 177.

(6) **Unjust Enrichment/Disgorgement**: Plaintiffs assert a claim for unjust enrichment,
alleging that Defendants wrongfully obtained "millions of dollars in purported commission
payments and reinsurance premiums," all derived from borrowers' FPI premium payments. *Id.* at ¶
179.  Plaintiffs seek restitution and disgorgement of these funds. *Id.* at ¶ 182.

(7) **Declaratory and Injunctive Relief**: Finally, Plaintiffs claim that they, and the class they
purport to represent, will be irreparably injured in the future by Defendants' conduct. *Id.* at ¶ 184.
Accordingly, Plaintiffs seek declaratory and injunctive relief asserting:

> that Defendants: (a) are prohibited from force-placing insurance when the servicer
> knows or has reason to know that the borrower has a policy in effect that meets the
> minimum requirement of the loan documents; (b) cannot force-place insurance that is
> in excess of the replacement cost of the improvements on the mortgaged property; (c)
> are prohibited from purchasing the force-placed insurance from a subsidiary, affiliate,
> or any entity in which they have an ownership interest; (d) are prohibited from
> splitting fees, giving or accepting kickbacks or referral fees, or accepting anything of
> value in relation to the purchase or placement of the force-placed insurance; (e) must
> make reasonable efforts to continue or reestablish the borrower's existing insurance
> policy if there is a lapse in payment; [] (f) must purchase any force-placed insurance
> for a commercially reasonable price; and (g) are prohibited from backdating
> force-placed insurance policies absent evidence of damage to the property or claims
> arising out of the property during any lapse periods.

*Id.* at ¶ 185.

**B.    The *Wahl* Settlement**

On June 2, 2011, after nearly three and a half years of litigation, a court in this district
certified a class  for settlement purposes which comprised the following:

United States District Court

For the Northern District of California

> [A]ll current and former California homeowner/borrowers who during the period from January 28, 2004 through [June 2, 2011] were additional insureds under a lender and/or servicer placed residential fire or hazard insurance policy issued by American Security Insurance Company ("ASIC") insuring improvements to the homeowner/borrowers' real property (an "LPI policy"), who paid some or all of the first year premiums for an ASIC LPI policy.

*Wahl v. Am. Sec. Ins. Co.*, C08-00555-RS, Dckt. No. 176, Findings and Order Certifying Class for Settlement Purposes, Directing the Issuance of Class Notice, and Scheduling a Fairness Hearing, at *6 (N.D. Cal.).  The claims in the case were based on ASIC's alleged practice of force-placing hazard insurance for periods during which prior hazard insurance would have been in effect for the mortgage lender pursuant to the homeowners' LLPE had it not been cancelled by ASIC's placement of FPI.

That class was finally certified and a settlement entered into judgment on September 30, 2011.  The settlement includes a Release that "forever discharge[s]" the Releasees "from any claims or liabilities arising from or related to the Released Claims."  *Wahl*, Dckt. No. 190, Final Order and Judgment, at *4.  For purposes of the Release, the term "Realeasees" means:

> American Security Insurance Company, doing business in its own name, and its predecessors, successors and assigns, and all of its respective past and present divisions, subsidiaries, parent companies, and affiliated companies (which shall include any person or entity which Controls, is Controlled by, or is under Common Control with any such party), including but not limited to any direct or indirect subsidiary of Assurant, Inc., and all of the officers, directors, employees, agents, brokers, distributors, representatives and attorneys of all such entities.  **Releasees shall also specifically include all lenders, servicers, agents or any of their affiliated entities purchasing or originating the issuance of a Policy or Policies by American Security Insurance Company, and all of their respective past and present divisions, subsidiaries, parent companies, and affiliated companies** (which shall include any person or entity which Controls, is Controlled by, or is under Common Control with any such party). The term "Control" (including without limitation, with correlative meaning, the terms "Controlled by" and "under Common Control with"), as used with respect to any entity, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through ownership of voting securities or otherwise.

*Id.* at *5 (emphasis added).

The term "Released Claims" means "all claims and causes of action **arising out of the facts alleged in the Action** which have been, or could have been, may be, or could be alleged or asserted in the Action by Plaintiff or the Class Members against Releasees."  *Id.* (emphasis added).

United States District Court

For the Northern District of California

1    Plaintiff Andrea North is the only member of the class who opted-out of the settlement that is

2  a plaintiff in the present case.  *Wahl*, Dckt. No. 180, Declaration of Tore Hodne in Support of Reply

3  to Motion for Final Approval of Class Action Settlement.

4    **C.    The Motion**

5    Defendants filed their Motion to Dismiss on November 21, 2011, arguing that each cause of

6  action fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

7    Defendants first assert that the *Wahl* settlement precludes all of the claims brought by the

8  individual California Plaintiffs—with the exception of Plaintiff Ms. North, who opted-out of the

9  settlement—and the purported California subclass.  Defendants' Motion to Dismiss Plaintiffs' First

10 Amended Complaint ("Motion"), 9.  Defendants contend that the "General Release in *Wahl* covered

11 any and all past, present, or future claims that the California named-Plaintiffs or the putative

12 California subclass had, may have had or could have had against Chase as the lender or servicer of

13 the loans under which the American Security lender-placed fire and hazard insurance policies at

14 issue in this Action arose."  Motion at 9 (citing RJN, Ex. A ("*Wahl* Final Order and Judgment"), 29).

15 Defendants further assert that the scope of the Release in *Wahl* "'specifically include[s] all lenders,

16 servicers, . . . purchasing or originating the issuance of a Policy or Policies by American Security

17 Insurance Company.'"  *Id.* at 10 (citing citing RJN, Ex. A ("*Wahl* Final Order and Judgment"), 29).

18 Because Defendants are lenders and/or servicers purchasing or originating insurance policies by

19 ASIC, Defendants argue they are deemed Releasees and therefore all claims released in *Wahl* now

20 brought by any member of the *Wahl* settlement class fail as a matter of law.  *Id.*  Defendants add

21 that, to the extent that Plaintiff Ms. North or any of the other seven Chase-related California opt-outs

22 want to assert claims under California law, they must do so by way of individual actions, not as class

23 actions under Rule 23, because the putative class is so small and easily identifiable as to make

24 joinder of all members practicable as a matter of law.  *Id.* at 11 (citing Fed. R. Civ. P. 23(a)(1)).

25    Even if the *Wahl* opt-out Plaintiff, Ms. North, and the New Jersey Plaintiff, Ms. Mayko,

26 pursue their individual claims, Defendants assert that each claim in the FAC fails as a matter of law

27 for the reasons stated below.

28    Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 *et seq.*: Defendants argue that

1    Plaintiffs' RESPA claim fails for two reasons.  First, the conduct Plaintiffs allege falls outside the

2    scope of RESPA.  *Id.* at 11-12.  Specifically, RESPA prohibits kickbacks, unearned fees, and fee-

3    splitting only in connection with "a real estate settlement service."  *Id.* (citing 12 U.S.C. §§ 2607(a)

4    & (b)).  Because "real estate settlement" under RESPA is synonymous with "closing" of the loan,

5    Defendants argue, RESPA governs only conduct directly related to the closing of the loan.  *Id.* at 12

6    (citing *Fitch v. Wells Fargo Bank, N.A.*, 709 F. Supp. 2d 510, 514 (E.D. La. 2010); *Ford v. New*

7    *Century Mortgage Corp.*, 2011 WL 2490720, at *4 (N.D. Ohio June 22, 2011); *Gens v. Wachovia*

8    *Mortgage Corp.*, 2011 WL 1791601, at *6 (N.D. Cal. May 10, 2011); 24 C.F.R. § 3.500.2(b)).

9    Defendants contend that federal courts, including the Ninth Circuit, have drawn a "temporal

10   distinction" whereby RESPA's prohibition on kickbacks, fees, and fee-splitting applies only "to fees

11   or costs 'payable at or before settlement' of the loan, not to 'post-settlement fees paid by mortgagors

12   after they have purchased their houses' and after the loan has closed."  *Id.* (quoting *Bloom v. Martin*,

13   77 F.3d 318, 321 (9th Cir. 1996); citing *Greenwald v. First Fed. Sav. & Loan Ass'n of Boston*, 446

14   F. Supp. 620, 625 (D. Mass. 1978), *aff'd*, 591 F.2d 417 (1st Cir. 1979)).  Defendants argue that

15   Plaintiffs' RESPA claim falls outside of RESPA's scope for one additional reason: RESPA "'does

16   not extend to overcharges,'" at least to the extent that the overcharge was for services actually

17   rendered.  *Id.* (quoting *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549, 554 (9th Cir.

18   2010)).  Accordingly, Defendants contend that the claim fails as a matter of law since the alleged

19   kickbacks and fees for FPI incurred after the closing of the loan, and because the alleged overcharge

20   is not covered by RESPA.

21          Second, Defendants argue that because Plaintiffs' loans closed between 2002 and 2008,

22   Plaintiffs' RESPA claim, brought in 2011, is time-barred under RESPA's one-year statute of

23   limitations.  *Id.* at 12-13 (citing 12 U.S.C. § 2614; *Parmer v. Wachovia*, 2011 WL 1807218, at *2

24   (N.D. Cal. Apr. 22, 2011); *Gens*, 2011 WL 1791601, at *6).  Defendants contend that equitable

25   tolling does not apply here because Plaintiffs' mortgage contracts "expressly warn" that if the

26   borrower failed to maintain appropriate insurance, Defendants may force-place such insurance at a

27   significant increase in cost and altered coverage.  *Id.* at 13.  Defendants reject any attempt by

28   Plaintiffs to justify the delay based on lack of expertise or the need to obtain counsel.  *Id.* at 13-14

United States District Court

For the Northern District of California

1   (citing *Santos v. U.S. Bank N.A.*, 716 F. Supp. 2d 970, 977 (E.D. Cal. 2010); *Garcia v. Brockway*,

2   526 F.3d 456, 466 (9th Cir. 2008)).

3       Breach of the Implied Covenant of Good Faith and Fair Dealing & Breach of Contract:

4       Defendants assert that both Plaintiffs' contract claims fail as a matter of law for the same

5   reason: Plaintiffs' mortgage contracts are unambiguous in establishing Defendants' prerogative to

6   force-place insurance "in the amount and for the periods that Chase required." *Id.* at 14-15 (citing

7   FAC, Exs. 1, 7, 17 at ¶ 5, 18 at ¶ 4).  Additionally, the contracts show that the parties "agreed that

8   this amount would be sufficient to protect Chase's interest in the Property, not that of Plaintiffs." *Id.*

9   at 15.  Defendants assert that the "unambiguous language in the Plaintiffs' contracts trumps the

10  allegations in their complaint" and the Court should therefore grant Defendants' motion to dismiss

11  as to both contract claims. *Id.* at 14-15 (citing *Barrous v. BP P.L.C.*, 2010 WL 4024774, *4 (N.D.

12  Cal. Oct. 13, 2010); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002);

13  *Hayes v. Wells Fargo Home Mortgage*, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006);

14  *Rodriguez v. Wells Fargo Bank, N.A.*, 2011 WL 2946381, *3 (E.D. Cal. July 21, 2011); *Lass v. Bank

15  of Am., N.A.*, 2011 U.S. Dist. LEXIS 89519 (D. Mass. Aug. 10, 2011)).

16      Unlawful Business Practices Under Cal. Bus. & Prof. Code §§ 17200 *et seq.*: Defendants

17  argue that Plaintiffs fail to state a claim under any of the UCL's three prongs, and contend that

18  Plaintiffs' seek remedies—damages and disgorgement of profits—not allowed under the UCL. *Id.* at

19  18 (citing *In re Napster Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1126 (N.D. Cal. 2005)).

20      Defendants assert that Plaintiffs' claim under the "unlawful" prong of the UCL rises and falls

21  with their RESPA claim. *Id.* at 16.  Because Plaintiffs' RESPA claim fails, Plaintiffs' cannot

22  maintain their UCL claim based on Defendants' alleged unlawful conduct. *Id.*  Plaintiffs' claim

23  based on the "unfair" prong also fails since Plaintiffs "cannot satisfy any of the tests that California

24  courts use" to evaluate whether conduct is unfair. *Id.* at 16-17.  Pursuant to those tests, Defendants

25  contend that Plaintiffs "have not pled any facts showing that Chase's alleged conduct 'threatens an

26  incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its

27  effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or

28  harms competition.'" *Id.* at 17 (quoting *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th

United States District Court

For the Northern District of California

1   1134, 1147 (2003)).  Nor have Plaintiffs pled facts sufficient to establish any of the three factors

2   under the balancing test: "'(1) the consumer injury must be substantial; (2) the injury must not be

3   outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury

4   that consumers themselves could not reasonably have avoided.'"  *Id.* (quoting *Davis v. Ford Motor*

5   *Credit Co.*, 179 Cal. App. 4th 581, 597 (2009)).  Finally, under the "fraudulent" prong, Defendants

6   argue that Plaintiffs' claim fails because Plaintiffs have not pled the alleged fraud with any

7   particularity, *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)), nor can

8   Plaintiffs demonstrate that members of the public are likely to be deceived by Defendants' conduct

9   in light of the unambiguous language in the mortgage contracts.  *Id.* (citing *Buller v. Sutter Health*,

10  160 Cal. App. 4th 981, 986 (2008)).

11          Violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2:

12          Defendants assert that Plaintiff's claim under the NJCFA fails for at least three reasons.

13  First, Plaintiffs fail to establish any unlawful conduct as required by the NJCFA.  *Id.* at 18 (citing

14  *N.J. Citizens Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. 2003)).  Second, Plaintiff

15  Mayko makes no allegation, and cannot make any allegation, that she was induced or lured into

16  making any purchase.  *Id.* (citing *Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp.2d 719, 724

17  (D.N.J. 2008)).  Third, Plaintiffs fail to allege any specific fraud under Fed. R. Civ. P. 9(b) as they

18  must to state a NJCFA claim.  *Id.* (citing *Capogrosso v. State Farm Ins. Co.*, 2009 WL 3447068, at

19  *3 (D.N.J. 2009)).

20          Alternatively, Defendants contend that, if the Court declines to dismiss Plaintiffs' NJCFA

21  claim on the merits, the claim should be dismissed or transferred for improper venue and/or forum

22  non-conveniens.  *Id.* at 19.  Applying the principles of judicial economy, convenience, and fairness

23  to the litigants, Defendants argue that the Court should dismiss or transfer the case to New Jersey

24  because all of the events related to the NJCFA claim occurred there.  *Id.* at 19-20 (citing *Remley v.*

25  *Lockheed Martin Corp.*, 2001 WL 681257, at *3 (N.D. Cal. June 4, 2001); *C.H. James & Co. v. Fed.*

26  *Food Marketers Co.*, 927 F. Supp. 187, 190 (S.D. W.Va. 1996)).

27          Unjust Enrichment/Disgorgement & Injunctive and Declaratory Relief: Defendants argue

28  that there is no independent cause of action for unjust enrichment.  *Id.* at 19 (citing *Bosinger v.*

**United States District Court**
For the Northern District of California

1    *Belden CDT, Inc.*, 358 Fed. Appx. 812, 815 (9th Cir. 2009); *Romero v. Mortgage Co.*, 2011 U.S.

2    Dist. LEXIS 69673, at *8 (N.D. Cal. June 28, 2011)).  Likewise, injunctive relief is a remedy and

3    not, in itself, a cause of action.  *Id.* (citing *Gomez v. Wachovia Mortgage Corp.*, 2010 WL 291817, at

4    *8 (N.D. Cal. Jan. 19, 2010); *Peterson v. Wash. Mut. Bank, et al.*, 10-cv-01462-JCS, slip op. at

5    *16-17 (N.D. Cal. July 29, 2010)).  Declaratory relief is similarly not a cause action.  *Id.* (citing

6    *Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997); *Gomez*, 2010 WL 291817, at *2).

7    Accordingly, Defendants ask this Court to dismiss these claims with prejudice.  *Id.*

8           **D.     The Opposition**

9           In response to Defendants' Motion, Plaintiffs reject Defendants' argument that the *Wahl*

10   settlement precludes the claims of the non-opt-out California Plaintiffs and the California subclass.

11   Plaintiffs contend that, despite the language in the Release, Defendants cannot be considered

12   Releasees because Defendants were non-parties to the *Wahl* case, listed nowhere in the *Wahl*

13   settlement documents, did not bargain for any benefit in, nor contribute to, the settlement, and were

14   not even aware of the settlement until well after final approval.  Plaintiffs' Opposition to

15   Defendants' Motion to Dismiss ("Opposition"), 5.  Plaintiffs also contend that the Release should

16   reflect the settlement notice, which states that only ASIC will be released.  Opposition at 5-6 (citing

17   RJN, Ex. 3 (*Wahl* Notice of Class Action Settlement)).

18          Additionally, Plaintiffs apply the doctrine of *res judicata* and argue that their claims are not

19   precluded by *Wahl* because that case involved different claims.  *Id.* at 5.  According to Plaintiffs,

20   *Wahl* "focused **exclusively** on the insurer-defendant's provision of coverage backdated to the end of

21   the expired policy thus overlapping with the extended coverage provided by the LLPE . . . ." *Id.*

22   (citing RJN, Ex. 1 (*Wahl*, FAC)).  Plaintiffs contend that the first amended complaint in *Wahl*,

23   unlike Plaintiffs' FAC, "contain[s] no allegations of lender misconduct, of collusion between any

24   lender (much less [JPMorgan Chase]) and insurers to circumvent federal law, of unlawfully inflated

25   excessive premiums for the force-placed insurance, of inappropriately limited coverage, of

26   backdated policies beyond the timeframe of the LLPE, of RESPA prohibited kickbacks, or of any

27   claims against the lender like those presented in this case." *Id.*  Plaintiffs assert that the "interests"

28   and "rights" sought to be protected by Plaintiffs were not addressed in *Wahl* and their claims are

United States District Court

For the Northern District of California

1   therefore not precluded.  *Id.* at 6-7 (citing *Daniels v. Anaconda Minerals Co.*, 2011 US. Dist. LEXIS

2   23920, at *31 (D. Mont. Mar. 9, 2011)).

3         Plaintiffs further contend that Defendants cannot "categorically limit Plaintiffs' claims to

4   those asserted in *Wahl* simply because they relate to force-placed insurance." *Id.* at 7.  Rather,

5   because the claims brought in *Wahl* do not arise from the "same factual predicate" as the "much

6   broader" claims asserted against Defendants here, the settlement does not preclude the claims.  *Id.*

7   (citing RJN, Ex. 2 (Wahl, Plaintiff's Motion for Preliminary Approval of Class Action Settlement);

8   *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *E. & J. Gallo Winery v. Encana Energy*

9   *Servs., Inc.*, 388 F. Supp. 2d 1148, 1157 (E.D. Cal. 2005)).  Plaintiffs do state that "[t]he sole

10  common factor between the two cases is the existence of allegations surrounding the overlap

11  between the LLPE and force-placed insurance." *Id.* at 8.

12        In addition to different claims, Plaintiffs argue that their case is not precluded because the

13  injuries alleged by Plaintiffs "are plainly distinct from those alleged in *Wahl*." *Id.* at 7 (citing

14  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2010 U.S. Dist. LEXIS 113815, at *35 (C.D. Cal. Aug.

15  13, 2010)).  "In *Wahl*, there were no damages sought from the lender[;] rescission of the force-place

16  insurance contract was sought[.] [T]here was no relief sought with respect to the mortgage, and there

17  were certainly no RESPA claims." *Id.*

18        Plaintiffs respond to Defendants' arguments regarding the specific claims asserted in

19  Plaintiffs' FAC as follows.

20        <u>Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 *et seq.*</u>: Plaintiffs reject

21  Defendants' assertions that Plaintiffs' claim falls outside RESPA's scope and that Plaintiffs' claim is

22  time-barred.

23        First, Plaintiffs argue that the statutory language, a Department of Housing and Urban

24  Development ("HUD") regulation, and case law support their conclusion that FPI is a "settlement

25  service" under 12 U.S.C. § 2607(b).  Regarding the HUD regulation, Plaintiffs cite to the following

26  language in "Regulation X":

27        Settlement service means any service provided in connection with a prospective or
      actual settlement, including, but not limited to, any one or more of the following:

28

United States District Court
For the Northern District of California

* * *

(10) Provision of services involving mortgage insurance;

(11) Provision of services involving hazard, flood, or other casualty insurance or homeowner's warranties;

(12) Provision of services involving mortgage life, disability, or similar insurance designed to pay a mortgage loan upon disability or death of a borrower, but only if such insurance is required by the lender as a condition of the loan;

*Id.* at 9 (citing 24 C.F.R. § 3500.2(b) (2011)).  Plaintiffs contend that this language "clearly" establishes that "settlement services include hazard insurance and other insurance 'required by the lender as a condition of the loan.'" *Id.*

Second, in further support of their proposition that FPI is a settlement service, Plaintiffs analogize to cases holding that mortgage insurance qualifies as a settlement service. *Id.* at 9-10 (citing *Munoz v. PHH Corp.*, 659 F. Supp. 2d 1094, 1099 (E.D. Cal. 2009); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 576 (N.D. Cal. 2007); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 756 n.2 (3d Cir. 2009)).  Plaintiffs argue that the *Munoz* decision, in particular, "recognizes that the determinative factor with regard to whether a particular service qualifies as a '[s]ettlement service' for purposes of Section 8 is not when the payment is tendered but rather, whether the purchase of the service, and the corresponding obligation to pay, are required by the lender in order for the transaction to close." *Id.* at 10.  Because FPI, like mortgage insurance, is required in order for the transaction to close, FPI should be considered a settlement service.  *Id.*

Plaintiffs next attempt to distinguish cases cited by Defendants, including a case in this district directly on point.  Plaintiffs argue that this Court should not follow *Gens v. Wachovia Mortgage Corp.*, 2011 U.S. Dist. LEXIS 49709 (N.D. Cal. May 10, 2011), because there the *pro se* plaintiff was overly litigious, creating a tortured procedural history and leaving the court with little patience to conduct a "thoughtful analysis" into whether FPI qualifies as a settlement service.  *Id.* at 11.  Moreover, Plaintiffs argue, the court's holding that FPI is not a settlement service is dicta: the "primary reason the *pro se* plaintiff's RESPA claims were dismissed was because the claims were time-barred."  *Id.* (citing *Gens*, 2011 U.S. Dist. LEXIS 49709, at *16-17).

Plaintiffs also reject Defendants' argument that RESPA "does not extend to overcharges." *Id.* at 11-12 (citing Motion at 12).  Defendants' assertion that an "overcharge" does not fall under

**United States District Court**
For the Northern District of California

1   RESPA if the payment was for services that were actually performed is inapplicable here, Plaintiffs

2   argue, because Defendants and their affiliates overcharged, but "did not provide any *bona fide*

3   services." *Id.* at 12.

4         Finally, Plaintiffs argue that their RESPA claim is not barred by the one-year statute of

5   limitations for two reasons.  First, Plaintiff McNeary-Calloway filed her original complaint on June

6   20, 2011, which was less than a year after Defendants force-placed her hazard insurance "in or

7   around September 5, 2010." *Id.* (citing FAC at ¶ 24; FAC, Ex. 4 (McNeary-Calloway FPI Policy

8   Notice)).  Second, even if the claim falls outside the statute of limitations, Plaintiffs argue the statute

9   should be equitably tolled.  *Id.*  Plaintiffs reject Defendants' contentions that the mortgage contracts

10  disclosed all information relevant to Plaintiffs' claims, arguing instead that Defendants concealed

11  the basis for such claims and it wasn't until, at the earliest, news reports in November 2010 revealed

12  the true nature of the FPI industry that the statute should begin to run.  *Id.* at 13-14.  Plaintiffs

13  contend that Defendants never disclosed that Defendants would receive a financial benefit, that their

14  reinsurance arrangements did not actually provide for a real transfer of risk, and that Plaintiffs would

15  be required to pay for redundant or unnecessary backdated coverage.  *Id.* at 13.

16        <u>Breach of the Implied Covenant of Good Faith and Fair Dealing & Breach of Contract</u>:

17        Plaintiffs contend that their contract claims are viable because, while the mortgage contracts

18  afforded Defendants the discretion to force-place insurance that is "required," the manner in which

19  Defendants exercised this discretion breached the contract's express terms and its implied covenant.

20  *Id.* at 15.  The contract "does not entitle Defendants to force-place backdated, unnecessary hazard

21  insurance with unreasonably high premiums for which Defendants received an improper kickback."

22  *Id.*  Plaintiffs cite to two cases where courts found allegations of bad faith force-placement of

23  insurance sufficient to defeat a motion to dismiss mortgage contract-based claims.  *Id.* at 17 (citing

24  *Abels v. JPMC Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009); *Williams v. Wells Fargo Bank,*

25  *N.A.*, 2011 U.S. Dist. LEXIS 119136 (S.D. Fla. Oct. 14, 2011)).  Plaintiffs conclude that whether

26  Defendants properly exercised their discretion under the contract is a question of material fact not to

27  be decided on a motion to dismiss.  *Id.* at 16 (citing *Low v. SDI Vendome S.A.*, 2003 U.S. Dist.

28  LEXIS 27603, at *17 (C.D. Cal. Jan. 7, 2003)).

United States District Court

For the Northern District of California

Unlawful Business Practices Under Cal. Bus. & Prof. Code §§ 17200 *et seq.*: Plaintiffs reject Defendants' arguments that their UCL claim fails.  Plaintiffs maintain that their claim is viable under the "unlawful" prong because they assert a valid RESPA claim.  *Id.* at 18.  Regarding the "unfair" prong, Plaintiffs assert that this district has adopted a three-part test with the following elements for determining unfairness in a consumer class action: "'(1) a substantial consumer injury; (2) the injury outweighs any countervailing benefits to consumers or competition; and (3) the injury could reasonably been avoided.'" *Id.* at 19 (citing *Kilgore v. KeyBank, N.A.*, 712 F. Supp. 2d 939, 951-52 (N.D. Cal. 2010)).  Plaintiffs argue they were injured because they were required to "pay exorbitant prices for [FPI]" and forced to "pay for duplicative and unnecessary coverage." *Id.*  Plaintiffs argue that this injury is not outweighed by any countervailing interest, and could not have reasonably been avoided. *Id.* at 19-20.

Plaintiffs also contend that they adequately state a claim under the "fraudulent" prong, having satisfied Rule 9(b) by identifying the who, what, where, when, and how of the alleged fraudulent conduct. *Id.* at 20.  The scheme Plaintiffs lay out in their FAC is sufficiently particular, they assert. *Id.* (citing *Linear Tech. v Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-5 (2007)). Plaintiffs reject Defendants' contention that Plaintiffs are unable to show that, given the language in the mortgage contracts, members of the general public are likely to be deceived by Defendants' conduct. *Id.*  Rather, Defendants' scheme is composed of "secret arrangements" undisclosed in the mortgage contracts, therefore making Defendants' reliance on the mortgage contracts unavailing. *Id.*

Finally, Plaintiffs make clear that they are seeking "disgorgement and/or restitution, not damages, from JPMC for its violations of the UCL." *Id.* at 21.

Violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2:

Plaintiffs argue that they have stated a cause of action under the NJCFA, despite Defendants' contentions to the contrary.  First, Plaintiffs reject Defendants' assertion that Plaintiffs must establish an underlying unlawful act in order to state a NJCFA claim. *Id.* at 21-22.  Instead, under the statute "an 'unlawful practice' is *any* 'unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or

1  omission of any material fact.'" *Id.* (quoting N.J. S.A. §56:8-2; *Cox v. Sears Roebuck & Co.*, 138

2  N.J. 2, 19, 647 A.2d 454, 463 (1994)).  Plaintiffs maintain that, under the statute, "unconscionable"

3  means a lack of "good faith and honesty." *Id.*  Defendants' FPI practices departed from this standard

4  of good faith and honesty in several ways; specifically, Plaintiffs contend "that Defendants never

5  told Plaintiffs that when force-placing insurance they would make no effort to shop for a reasonably

6  priced policy, that Defendants did not disclose that they would receive a kickback for each policy

7  force-placed, did not advise that no effort would be made to renew the existing policies, and did not

8  disclose that the policies Defendants purchased for Plaintiffs would be backdated to cover periods

9  during which no risk existed." *Id.* at 22.

10     Second, Plaintiffs reject Defendants' "narrow" construction of the NJCFA, requiring that the

11  alleged conduct induced or lured Plaintiffs. *Id.* at 22-23.  Plaintiffs contend that the statute requires

12  only that the unlawful practice at issue be "'in connection with' the sale or advertisement of a

13  commercial product or service or the 'subsequent performance' related thereto." *Id.* at 23 (citing

14  N.J. S.A. §56:8-2).  Plaintiffs argue that Defendants' practices were "in connection with" "Plaintiffs'

15  entry into the initial mortgages or refinances and the [] purchase of [FPI]." *Id.*

16     Third, Plaintiffs argue that they have pled their NJCFA claim with the particularity required

17  by Rule 9(b).  They contend that to satisfy Rule 9(b) in the context of a NJCFA claim in a class

18  action complaint, "the complaint need only contain 'sufficient detail as to [a named plaintiff's]

19  claims to apprise [a defendant] of that plaintiff's exact grounds for relief and the specific conduct

20  that plaintiff charges.'" *Id.* at 24 (quoting *Pacholec v. Home Depot USA, Inc.*, 2006 U.S. Dist.

21  LEXIS 68976 (D.N.J. Sept. 25, 2006)).

22     Finally, because viable claims asserted under California law exist, Plaintiffs insist that

23  transfer of the NJCFA claim to the District of New Jersey is not warranted. *Id.* at 25.  Plaintiffs ask

24  this Court to apply the pendant venue doctrine in order to honor Plaintiffs' chosen forum. *Id.*

25  Plaintiffs further contend that the California and New Jersey consumer claims "address the *same*

26  [FPI] scheme," and California courts regularly adjudicate NJCFA claims in conjunction with other

27  California consumer claims, particularly where the claims have a common nucleus of operative

28  facts. *Id.* (citing *In re Sony VAIO Computer Notebook Trackpad Litig.*, 2010 U.S. Dist. LEXIS

**United States District Court**

For the Northern District of California

1   115142, at \*13-18 (S.D. Cal. Oct. 28, 2010 ); *Lucent Techs., Inc. v. Dicon Fiberoptics, Inc.*, 2007

2   U.S. Dist. LEXIS 37646, at \*3 (N.D. Cal. May 10, 2007)).

3   <u>Unjust Enrichment/Disgorgement & Injunctive and Declaratory Relief</u>: Plaintiffs argue that,

4   contrary to Defendants' contentions, California courts and the Ninth Circuit recognize a cause of

5   action for unjust enrichment.  *Id.* (citing *Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 91 Cal.

6   Rptr. 2d 881, 883 (2000); *Ben & Jerry's Franchising, Inc. v. Porghavami*, 418 Fed. Appx. 607 (9th

7   Cir. 2011)).  Regarding the injunctive and declaratory relief claim, Plaintiffs assert that "dismissal

8   would be premature" at this stage in the litigation, but even if the Court decides to dismiss this cause

9   of action, injunctive or declaratory relief would still be available if warranted.  *Id.* at 24-25 n.8

10  (citing *Wagner v. Aurora Loan Servicing*, 2011 U.S. Dist. LEXIS 148726, at \*20 (D. Haw. Dec. 27,

11  2011)).

12      **E.      The Reply**

13      In response to the Opposition, Defendants cite to specific language in the Wahl first amended

14  complaint to argue that Plaintiffs here plead "factual allegations challenging the identical

15  arrangements between lenders and [ASIC]" that were at issue in *Wahl*, and therefore Plaintiffs'

16  claims are precluded.  Defendants' Reply in Support of Motion to Dismiss ("Reply"), 5 (citing *Wahl*

17  FAC at ¶ 14).  Moreover, Defendants point out, Plaintiffs concede that their Complaint contains

18  factual allegations that are "common" and "overlapping" with *Wahl*.  Reply at 5.

19  **IV.     ANALYSIS**

20      **A.      Legal Standard**

21          **1.      Rule 12(b)(6)**

22      A complaint may be dismissed for failure to state a claim for which relief can be granted

23  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

24  of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star*

25  *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the

26  pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

27  pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

28  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

1    In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

2    "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-

3    moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may

4    be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

5    theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint  must

6    "contain either direct or inferential allegations respecting all the material elements necessary to

7    sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562

8    (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  The

9    factual allegations must be definite enough to "raise a right to relief above the speculative level."  *Id.*

10   at 1965.  However, a complaint does not need detailed factual allegations to survive dismissal.  *Id.* at

11   1964.  Rather, a complaint need only include enough facts to state a claim that is "plausible on its

12   face."  *Id.* at 1974.  That is, the pleadings must contain factual allegations "plausibly suggesting (not

13   merely consistent with)" a right to relief.  *Id.* at 1965 (noting that this requirement is consistent with

14   Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to

15   relief").

16   **B.       Whether the *Wahl* Settlement Precludes the Claims**

17   Defendants argue that the *Wahl* settlement released any and all of the claims brought by

18   Plaintiffs McNeary-Calloway and the MacKinnons.  Plaintiffs contend that the settlement has no

19   effect on this action because they bring different claims that do not share any common factors with

20   the claims in *Wahl*, except in regards to their allegations concerning the overlap of LLPE and FPI.

21   The Court finds that the *Wahl* settlement limits the scope of the Plaintiffs' claims.

22   **1.       Identical Factual Predicate**

23   **a.       Background Law**

24   "In California, interpretation of a settlement agreement is governed by contract principles."

25   *Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (citing *General Motors Corp. v.*

26   *Superior Court*, 12 Cal. App. 4th 435 (1993).  However, "a settlement agreement's bare assertion

27   that a party will not be liable for a broad swath of potential claims does not necessarily make it so."

28   *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d

1120, 1134 (9th Cir. 2008) ("While Boeing may have drafted the settlement agreement to include as broad a release as possible, the release would have only been enforceable as to subsequent claims . . . depending upon the same set of facts.")).  At the same time, "[a] settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Id.* (citing *Williams*, 517 F.3d at 1133; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (holding that a settlement release encompasses a plaintiff's claims if they arise from an "identical factual predicate" as the claims asserted by the settling plaintiff in the previous litigation).  "A class settlement may also release factually related claims against parties not named as defendants . . . ." *Reyn's Pasta*, 442 F.3d at 748 (citing *Class Plaintiffs*, 955 F.2d at 1287-89).

### b.        Application of Law to Facts

Plaintiffs argue that the claims of the non-opt-out members of the *Wahl* class are not precluded, relying primarily on the doctrine of *res judicata*.  The Court, however, declines to apply *res judicata* in evaluating the preclusive effects of the settlement; rather, consistent with the Ninth Circuit precedent cited above, the Court will analyze the issue under the "identical factual predicate" doctrine.  Similarly, to the extent Defendants argue that the Court need only apply California contract law, the Court rejects that argument.  To be sure, California contract law does apply to the settlement's interpretation.  But interpretation is only the first question.  The Court must also decide which claims fall within, or outside, the Court's interpretation of the settlement.  The Court applies the "identical factual predicate" doctrine for this latter purpose.

As an initial matter, the Court will first address Plaintiffs' argument that any preclusive effects of the settlement should not apply to Defendants because they should not be considered "Releasess."  Plaintiffs argue that Defendants cannot be considered Releasees because Defendants were non-parties to the *Wahl* case, listed nowhere in the *Wahl* settlement documents, did not bargain for any benefit in, nor contribute to, the settlement, and were not even aware of the settlement until well after final approval.  Opposition at 5.  Plaintiffs are incorrect for several reasons.

1   First, Defendants are included in the Stipulation of Settlement provided by the *Wahl* parties

2   beginning on May 12, 2011.  *See Wahl*, Dckt. No.173, Declaration of Plaintiff's Counsel in Support

3   of Motion for Settlement, Ex. 1 ("Stipulation of Settlement").  The Stipulation of Settlement was

4   explicitly referenced in the Court's preliminary approval of the settlement, the notice to the class,

5   and fully incorporated into the Court's final order approving the settlement on September 30, 2011.

6   *See Id.* at Dckt No. 176, Findings and Order Certifying Class for Settlement Purposes, Directing the

7   Issuance of Class Notice, and Scheduling a Fairness Hearing, at *2, 3, 5; RJN, Ex. 3 (*Wahl* Notice of

8   Class Action Settlement), ¶¶ 13, 25; *Wahl*, Dckt. No. 189, Final Order and Judgment, ¶ 1.  The

9   relevant portion of the definition of "Releasees" in the Stipulation of Settlement is identical to the

10  definition of that term in the Court's final order approving the settlement.  To the extent Plaintiffs

11  argue that the Releasees must be listed by name, the Court rejects that argument.  It is enough that

12  the definition states that lenders and servicers purchasing or originating ASIC FPI policies are

13  considered Releasees.[4]  Second, because a class settlement may also release factually related claims

14  against parties not named as defendants, it does not matter that Defendants were not parties in *Wahl*.

15  _____

16      [4] Plaintiffs appear to suggest that this Court should collaterally review the adequacy of notice
    to the class because the notice fails to explicitly reveal the full scope of the Release.  The Court,
17  however, finds that the "Releasees" definition was disclosed to the class well before final approval of
    the settlement.  Although it is true that the notice itself did not explicitly reveal that other parties besides
18  ASIC would be released as a result of the settlement, the notice did state that, in addition to releasing
    ASIC, staying in the class
19
20          means that all of the Court's orders concerning the Class will apply to you and legally bind you,
            **including the Release described in detail in the Stipulation of Settlement**.  This Release
            provision describes exactly the legal claims you give up if this settlement is approved and you
21          do not exclude yourself.

22  RJN, Ex. 3 (*Wahl* Notice of Class Action Settlement), ¶ 13 (emphasis added).  The notice also informs
    members of the class that the Stipulation of Settlement includes more details and that a copy may be
23  obtained by downloading it from the Internet or writing to class counsel.  *Id.* at ¶ 25.  Additionally,
    Plaintiffs give no indication that they were not otherwise apprised of the *Wahl* litigation or knew of the
24  Releasees definition prior to final approval of the settlement; indeed, many of the changes in Plaintiffs'
    FAC, filed while final approval of the settlement was pending, suggest that Plaintiffs were attempting
25  to salvage their case in light of the settlement's effects.  Therefore, even if the adequacy of notice was
    subject to collateral review, the Court concludes that, at a minimum, these Plaintiffs were provided "an
26  adequate basis for informed decision-making" since they knew, through the Stipulation of Settlement
    or otherwise, that Defendants were included as Releasees.  *See McCubbrey v. Boise Cascade Home &*
27  *Land Corp.*, 71 F.R.D. 62, 68 (N.D. Cal. 1976) (Pekham, J.) (finding that plaintiffs bringing parallel
    litigation were not adequately informed of settlement's terms only where plaintiffs received insufficient
28  informal and formal notice).

United States District Court
For the Northern District of California

*See Reyn's Pasta*, 442 F.3d at 748.  Finally, Plaintiffs cite to no authority for the proposition that Defendants must contribute to the settlement in order for the settlement to release them, and the Court finds no such rule.

Next, the Court finds that the settlement released "all claims and causes of action **arising out of the facts alleged in the Action** which have been, or could have been, may be, or could be alleged or asserted in the Action by Plaintiff or the Class Members against Releasees." *Wahl*, Dckt. No. 189, Final Order and Judgment, at *5 (emphasis added).  At the same time, the settlement did *not* release or "affect any claims not arising from, nor regarding, nor relating in any way to the Released Claims." *Id.* at *9.  The Court interprets this language to be a general release of all claims against Releasees to the extent those claims "depend[] upon the same set of facts" as the claims in *Wahl*. *Williams*, 517 F.3d at 1134.

For purposes of determining the bases on which Plaintiffs McNeary-Calloway and the MacKinnions are precluded from asserting their claims, the allegations in Plaintiffs' FAC can be divided broadly into two independent categories: 1) allegations related to force-placing ASIC insurance policies that included coverage for periods of time where an LLPE was in place; and 2) allegations related to force-placing ASIC insurance policies that *did not* include coverage for periods of time where an LLPE was in place.  Both categories are discussed below.

The Court finds that the first category of allegations is precluded by the *Wahl* settlement. Plaintiffs admit that the existence of  allegations surrounding the placement of FPI despite the existence of an LLPE is a "common factor between the two cases."  Opposition at 8.  Plaintiffs' contention that, despite the shared set of facts, their claims based on backdating over LLPE periods should not be precluded because of the "different parties, claims and relief sought herein" fails as a matter of law.  As discussed above, what matters is whether a claim shares an identical factual predicate with the released claims.  The practice of force-placing ASIC hazard insurance polices that included coverage for periods of time where prior hazard insurance would have been in effect for the mortgage lender pursuant to the homeowners' LLPE had it not been cancelled by the FPI, was the central allegation in the *Wahl* action, used to support all of plaintiff's claims.  Here, Plaintiffs admit to making the identical allegation in at least some of the claims.  The Court therefore finds that all of

**United States District Court**

For the Northern District of California

1   the California non-opt-out Plaintiffs' claims arising out of FPI polices that were placed with ASIC

2   (the only insurer at issue in *Wahl*) which overlapped, or cancelled, the LLPE period, are barred by

3   the settlement.

4          The Court finds that the second category of allegations are not precluded by the *Wahl*

5   settlement.  The force-placing of insurance policies which did not include coverage for any LLPE

6   period was not the basis for any of the claims asserted in *Wahl*.  As stated by the *Wahl* Court,

7   "Wahl's claims in this action all arise from her basic contention that when ASIC issues a 'force

8   placed' policy upon the cancellation of a homeowner's policy, but *before* the lender's protections

9   under an LLPE have expired, the ASIC policy 'overlaps' the prior coverage and therefore 'provides

10  no actual coverage.'"  *Wahl v. Am. Sec. Ins. Co.*, 2008 WL 2444802, at *1 (N.D. Cal. June 16, 2008)

11  (emphasis original).  Here, the non-opt-out Plaintiffs' complaint includes allegations that Defendants

12  force-placed insurance policies that did not overlap with LLPE coverage.  The allegations related to

13  those policies depend on a different set of facts as the claims that gave rise to the settlement.

14         The Ninth Circuit's holding in *Hesse v. Sprint Corp.* is instructive in this case.  In *Hesse*, the

15  court considered whether a broad release of claims in a nationwide settlement agreement between

16  Sprint and its customers, the *Benny* settlement, precluded a class action involving a Washington state

17  tax that Sprint charged to its Washington customers.  *Hesse*, 598 F.3d at 584.  The court found that

18  the Washington class action was not precluded because the claims did not share an identical factual

19  predicate with the claims resolved in the *Benny* settlement.  The court reasoned as follows:

20         The claims underlying the *Benney* Settlement dealt exclusively with specific nationwide
       surcharges to recoup the costs of compliance with federal programs, whereas the claims at
21     issue in the present case involve Sprint's statewide surcharge to recoup the cost of the
       Washington B & O Tax allegedly in violation of a Washington statute.  The superficial
22     similarity between the two class actions is insufficient to justify the release of the later claims
       by the settlement of the former.  Both involve claims that Sprint improperly billed
23     government taxes or fees to its customers, but they deal with different surcharges, imposed to
       recoup different costs, that were alleged to be improper for different reasons.

24

25  *Id.* at 591.

26         As in *Hesse*, the two actions here share a "superficial similarity" in that both deal with claims

27  that FPI policies were imposed for periods of time where coverage was unnecessary.  But the claims

28  here involve different policies that did not overlap with, or cancel, LLPE coverage and that are

                                                    26

United States District Court

For the Northern District of California

1    alleged to be improper for different reasons.  The Court concludes that claims raised in this case

2    arising out of the force-placement of policies that did not overlap with, or cancel, LLPE coverage,

3    are not predicated on the same set of facts as the claims of the *Wahl* plaintiff, and therefore were not

4    released by the *Wahl* settlement.[5]

5         The Court declines to rule at this stage of the case on the issue of whether the California non-

6    opt-out Plaintiffs' (Ms. McNeary-Calloway and the MacKinnons) claims are barred based on this

7    interpretation of the settlement.  That decision will depend on, *inter alia*, whether the policies

8    purchased by Plaintiffs before FPI included LLPE coverage, and when that coverage lapsed.  The

9    parties did not brief these issues in any detail, and it is best left for summary judgment, where the

10   Court will have before it a fully developed factual record.

11        **C.    Whether Plaintiffs State a Claim for Violation of RESPA**

12        Defendants seek dismissal of Plaintiffs' RESPA claim on the grounds that the claim falls

13   outside RESPA's scope and that the claim is time-barred.  The Court finds that Plaintiffs do not state

14   a claim under RESPA, and grants Defendants' Motion on that basis only.

15             **1.    Background Law**

16        Plaintiffs' RESPA claim is based on Section 2607(a)-(b), which reads:

17        (a) Business referrals

18        No person shall give and no person shall accept any fee, kickback, or thing of value pursuant
         to any agreement or understanding, oral or otherwise, that business incident to or a part of a
19       *real estate settlement service* involving a federally related mortgage loan shall be referred to
         any person.

20

21        (b) Splitting charges

22        No person shall give and no person shall accept any portion, split, or percentage of any
         charge made or received for the rendering of a *real estate settlement service* in connection
23       with a transaction involving a federally related mortgage loan other than for services actually
         performed.

24

25    _____

26        [5] To the extent Defendants argue that the claims in this case and in *Wahl* overlap with respect
      to allegations of a scheme between Defendants and FPI providors, the Court finds that the *Wahl*
      plaintiff's claims were not based on such allegations.  The *Wahl* plaintiff did allege a scheme between
27    ASIC and mortgage lenders, similar to the scheme alleged here.  *See Wahl*, Dckt. No. 14, Plaintiff's
      First Amended Complaint, ¶ 14.  But that allegation in the *Wahl* complaint consists of a mere paragraph
28    and is not the factual predicate for any of the *Wahl* plaintiff's claims.

United States District Court

For the Northern District of California

12 U.S.C. § 2607 (emphasis applied).

Under RESPA, the term "settlement service" includes:

any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement[.]

12 U.S.C. § 2602(3).

The Code of Federal Regulations defines settlement services as "any service provided in connection with a prospective or actual settlement, including . . . [the] [p]rovision of services involving hazard, flood, or other casualty insurance or homeowner's warranties." 24 C.F.R. § 3500.2. A "settlement" is "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan," i.e. the "closing" or "escrow." 24 C.F.R. § 3500.2(b). Finally, Section 2607 has a statute of limitations of one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614.

### 2.   Application of Law to Facts

#### a.   "Settlement Service" Under RESPA Section 2607

The parties dispute whether FPI constitutes a "settlement service" under RESPA. The plain language of the statute and its implementing regulations require the Court to conclude that, under these facts, FPI is not a "settlement service" under RESPA. Plaintiffs' claim under Section 2607 fails as a matter of law and is accordingly dismissed with prejudice.

Plaintiffs argue that the "determinative factor" in deciding whether a particular service qualifies as a "settlement service" is whether the purchase of the service "is required by the lender in order for the transaction to close." This argument, however, is contrary to plain words of the statute. "Settlement service" is defined as "any service provided in connection with a real estate settlement." 12 U.S.C. § 2602(3). This language indicates that RESPA covers only those services provided—not necessarily required—in connection with a closing. It is undisputed here that Defendants did not provide, nor were any way involved in, the hazard insurance purchased in connection with the

United States District Court

For the Northern District of California

1    closing of the loans.  Rather, Plaintiffs, without any involvement of the Defendants, first purchased

2    the hazard insurance policies on the open market and only some two to eight years after the closing

3    of their respective loans did Defendants "provide" hazard insurance.  Moreover, the policies first

4    purchased by Plaintiffs are not at issue in this case.  The fact that hazard insurance was required in

5    order to close the loan is irrelevant here in deciding whether the hazard insurance at issue is a

6    "settlement service."

7          Plaintiffs cite to *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572 (N.D. Cal. 2007) and *Munoz v.*

8    *PHH Corp.*, 659 F. Supp. 2d 1094 (E.D. Cal. 2009), in support of their proposition.  Those cases

9    held that mortgage insurance provided in connection with the settlement constitutes a settlement

10   service, notwithstanding that the risk insured or the premiums made incur after the closing of the

11   loan.  *Kay*, 247 F.R.D. at 576; *Munoz*, 659 F. Supp. 2d at 1098-99.  The courts there reasoned that

12   since mortgage insurance was required in order to close the loan, the provision of mortgage

13   insurance occurred at the closing of the loan, rather than at some point in time after settlement when

14   the risk would arise or the premium would be paid.  *Id.*  While it is true that, like the mortgage

15   insurance in *Kay* and *Munoz*, hazard insurance was required to close Plaintiffs' loans, Plaintiffs'

16   argument ignores the basic requirement that the service about which Plaintiffs complain must be

17   provided to the borrower in connection with the settlement.  The allegations in Plaintiffs' FAC state

18   that Defendants provided hazard insurance upon a lapse in the borrower's coverage only well after

19   the closing of loans.  Because RESPA covers only the provision of services "in connection with" the

20   closing of the loan, the Court cannot conclude that providing hazard insurance years after settlement

21   qualifies as a settlement service.  *See Bloom v. Martin*, 77 F.3d 318, 320-21 (9th Cir. 1996) (finding

22   that services provided, and fees assessed, at some indeterminate time after the settlement are not

23   "settlement services" under RESPA); *see also Gens v. Wachovia Mortg. Corp.*, 2011 U.S. Dist.

24   LEXIS 49709, at *17-18 (N.D. Cal. May 10, 2011) (Koh, J.) (holding that defendant's purchase of

25   hazard insurance some two to three years after the closing of the loan "does not fall within the ambit

26   of RESPA because the alleged fees are not connected to the 'settlement' or closing of the loan");

27   *Lass v. Bank of Am., N.A.*, 2011 WL 3567280, at *6 (D. Mass. Aug. 11, 2011) (finding that 15-year

28

1   period between closing of the loan and the force-placement of insurance too great in order to find

2   that the service was "in connection with a real estate settlement").[6]

3   **D.      Whether Plaintiffs State a Viable Contract Claim**

4          Plaintiffs bring two contract-based claims: a breach of contract claim based on an express

5   provision, and a breach of the implied covenant of good faith and fair dealing claim.  The Court

6   finds that all California Plaintiffs state a breach of contract claim based on a breach of an express

7   term of the contracts, as well as a claim based on a breach of the implied covenant.  The Court also

8   finds that the New Jersey Plaintiff states a claim under New Jersey law as to either theory of breach.

9   **1.      Background Law**

10          The elements of a cause of action for breach of contract are: 1) the existence of the contract;

11  2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4)

12  damages.  *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  "There is

13  implied in every contract a covenant by each party not to do anything which will deprive the other

14  parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960).

15  A breach of contract may be established on the basis of either an express provision of the contract or

16  on the implied covenant of good faith and fair dealing.  *See Storek & Storek, Inc. v. Citicorp Real*

17  *Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) (recognizing that "every contract imposes upon each

18  party a duty of good faith and fair dealing in the performance of the contract such that neither party

19  shall do anything which will have the effect of destroying or injuring the right of the other party to

20  receive the fruits of the contract").  An implied covenant of good faith and fair dealing cannot

21  contradict the express terms of a contract.  *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon*

22  *Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)).  Further, because "the implied covenant operates to

23  protect the express covenants or promises of [a] contract ... [it] cannot impose substantive duties or

24  limits on the contracting parties beyond those incorporated in the specific terms of [the parties']

25  agreement."  *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 805 (2008).

26          "Facts alleging a breach, like all essential elements of a breach of contract cause of action,

27  must be pleaded with specificity."  *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5

28

United States District Court

For the Northern District of California

---

[6]  Because the Court finds that Plaintiffs' FPI policies do not constitute a "settlement service" under RESPA, the Court need not decide whether any of Plaintiffs' claims are barred by the statute of limitations.

(2007). Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated. *See Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (2010).

In New Jersey, a covenant of good faith and fair dealing is implied in every contract. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). Implied covenants are as effective components of an agreement as those covenants that are express. *Aronsohn v. Mandara*, 98 N.J. 92, 100 (1984). Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term. *Sons of Thunder, Inc.*, 148 N.J. at 419. Because the breach of the implied covenant arises only when the other party has acted consistent with the contract's literal terms, if a party is found to have breached an express term of the contract, there can be no separate breach of the implied covenant. *Wade v. Kessler Inst.*, 172 N.J. 327, 344-45 (2002) (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 240 (2001)).

### 2. Application of Law to Facts

#### a. Breach of an Express Provision

Plaintiffs maintain that Defendants breached the contracts' express term that supposedly limits Defendants' discretion to force-place insurance only to the extent such insurance "is required." Defendants contend that the mortgage contracts unambiguously gives Chase the discretion to force-place insurance in the amount and for the time periods it requires. The Court cannot conclude that Plaintiffs' contracts authorize all of Defendants' alleged wrongful actions in the complaint.

The mortgage contracts for the California Plaintiffs have identical language, reading as follows:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards . . . for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan.
> . . .
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might

31

United States District Court
For the Northern District of California

1    provide greater or lesser coverage than was previously in effect. Borrower acknowledges that
2    the cost of the insurance coverage so obtained might significantly exceed the cost of
     insurance that Borrower could have obtained.

3    FAC, Exs. 1, 7, 17 at ¶ 5.

4          Pursuant to the contracts' terms, Defendants are afforded broad discretion to compel

5    borrowers to insure against particular hazards, at particular amounts, and for certain periods of time.

6    However, broad discretion is not unlimited discretion.  Nothing in the contract necessarily authorizes

7    charges regardless of amount and regardless of whether Defendants receive a portion of the

8    premiums.  Nor does anything in the contract authorize backdating FPI policies to cover periods of

9    time where no loss occurred.  Because the Court cannot say that the contracts' terms unambiguously

10   authorize Defendants' alleged behavior, the Court denies Defendants' motion to dismiss the

11   California Plaintiffs' breach of contract claim.[7]  *See Barrous v. BP P.L.C.*, 2011 WL 4024774, at *4

12   (N.D. Cal. Oct. 13, 2010) (Koh, J.) ("A court may resolve contractual claims on a motion to dismiss

13   if the terms of the contract are unambiguous.").

14         Plaintiff Mayko's mortgage contract contains slightly different language that could be

15   interpreted as explicitly restricting the lender's discretion in force-placing insurance.  Ms. Mayko's

16   contract reads, in part:

17         Borrower shall insure all improvements on the Property . . . against any hazards . . . for
           which Lender requires insurance. This insurance shall be maintained in the amounts and for
18         the periods that Lender requires.
           . . .
19
           If Borrower . . . fails to perform any [] covenants and agreements contained in this Security
20         Instrument . . . then Lender may do and pay **whatever is necessary to protect the value of
           the Property and Lender's rights in the Property**, including payment of taxes, hazard
21         insurance and other items . . . .

22   FAC, Ex. 18 (Ms. Mayko's Mortgage Contract) at ¶¶ 4, 7 (emphasis added).  This language provides

23   a basis for the claim that Defendants may force-place insurance only to the extent such insurance "is

24   necessary" to protect the property's value and Defendants' rights in the property.  Moreover, like the

25   California Plaintiffs' contracts, Ms. Mayko's contract does not provide Defendants with unlimited

26

27   _____

28         [7]  Defendants' reliance on *Lass v. Bank of Am., N.A.*, 2011 WL 3567280 (D. Mass. Aug. 10,
     2011) is misplaced.  In *Lass*, the court held that the plaintiff's mortgage contract authorized the lender
     to increase the amount of flood insurance required beyond the amount required at the time the mortgage
     was executed.  *Id.* at *3.  Because that aspect of Plaintiffs' mortgage contracts are not at issue in this
     case, the Court finds *Lass* unhelpful in evaluating Plaintiffs' claim.

United States District Court
For the Northern District of California

1   discretion to force-place insurance.  Accordingly, Defendants' motion to dismiss is also denied as to

2   Plaintiff Mayko's claim.

3                               **b.       Breach of the Implied Covenant**

4          Even a defendant who does not breach a contract may still be liable for breach of the

5   covenant of good faith and fair dealing if they fail to perform the contract in good faith.  *See Carma*,

6   2 Cal. 4th at 373.  Here, the California Plaintiffs argue that even though Defendants reserved the

7   discretion to force-place insurance, they exercised that discretion in bad faith by force-placing

8   "backdated, unnecessary hazard insurance with unreasonably high premiums for which Defendants

9   received an improper kickback."  Opposition at 15.

10          "The covenant of good faith finds particular application in situations where one party is

11   invested with a discretionary power affecting the rights of another.  Such power must be exercised in

12   good faith."  *Carma*, 2 Cal. 4th at 372; *see Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923

13   (1985) ("[W]here a contract confers on one party a discretionary power affecting the rights of the

14   other, a duty is imposed to exercise that discretion in good faith and in accordance with fair

15   dealing.") (internal quotations omitted).  The exercise of discretionary powers is evaluated under the

16   implied covenant to assure that the promises of the contract are effective and in accordance with the

17   parties' legitimate expectations.  *See Carma*, 2 Cal. 4th at 373-74; *Gabana Gulf Distrib., Ltd. v.*

18   *GAP Int'l Sales, Inc.*, 2008 WL 111223, at *8 (N.D. Cal. Jan. 9, 2008) (Breyer, J.); *Schwarzkopf v.*

19   *Int'l Bus. Machs., Inc.*, 2010 WL 1929625, at *13 (N.D. Cal. May 12, 2010) (Fogel, J.).  However,

20   the covenant cannot "be read to prohibit a party from doing that which is expressly permitted by an

21   agreement.  On the contrary, as a general matter, implied terms should never be read to vary express

22   terms."  *Carma*, 2 Cal. 4th at 374.

23          Defendants contend that *Carma* forecloses Plaintiffs' claim that the implied covenant

24   restricts Defendants' express contractual right because such a restriction would vary the express

25   terms.  The California Supreme Court's decision in Carma, however, is not so straightforward.  In

26   *Carma*, the parties had entered into a commercial lease agreement which stated that if the tenant

27   procured a potential sublessee and asked the landlord for consent to sublease, the landlord had the

28   right to terminate the lease, enter into negotiations with the prospective sublessee, and appropriate

     for itself all profits from the new arrangement.  *Id.* at 351-52.  In upholding the right of the landlord

                                                    33

**United States District Court**
For the Northern District of California

1    to exercise its discretion and realize a profit at the expense of the tenant, the Court held that the

2    landlord's "termination of the lease in order to claim for itself [a profit] was expressly permitted by

3    the lease and was clearly within the parties' reasonable expectations." *Id.* at 376.

4              Unlike in *Carma*, however, the actions at issue here—backdating FPI unnecessarily and

5    force-placing insurance with unreasonably high premiums in order to facilitate kickbacks to

6    Defendants—were not expressly bargained for in the contract.  Rather, Defendants merely bargained

7    for the right to exercise discretion over the scope and extent of coverage borrowers were required to

8    maintain.  Pursuant to *Carma*, that discretion, as to acts and conduct not expressly provided for in

9    the contract, must comport with the implied covenant of good faith and fair dealing.  Moreover,

10   although the Court in *Carma* found the landlord's actions to be expressly agreed to in the contract,

11   the Court still required that the landlord's actions come within the parties' "reasonable

12   expectations." *Id.* at 376; *see Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1122

13   (N.D. Cal. 2010) (Alsup, J.) (recognizing *Carma*'s holding that the implied covenant will not vary

14   express terms of the contract, but finding that *Carma* also "emphasized that express grants of

15   discretion were still subject to 'the reasonable expectations of the parties'").

16             Other courts applying *Carma*'s principles have come to similar conclusions as this Court.  In

17   *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354 (1997), the actress Sandra Locke entered into a

18   contract with Warner whereby Warner was given a right of first refusal over developing Locke's

19   movie projects.  *Id.* at 358.  After refusing to develop any of Locke's projects, Locke sued alleging

20   breach of the implied covenant.  *Id.* at 359.  The court in *Locke* rejected Warner's contentions that

21   the implied covenant did not apply to its actions because its right to refuse Locke's projects was

22   expressly provided for in the contract.  *Id.* at 367.  The court found instead that the contract gave

23   Warner merely the discretion with respect to developing Locke's projects.  *Id.*

24             Applying *Carma* and *Locke*, *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, 2008 WL

25   111223 (N.D. Cal. Jan. 9, 2008) (Breyer, J.), also held that the implied covenant governed a party's

26   right to exercise discretion in performing the contract.  *Id.* at *8.  *Gabana* involved a clothing

27   distribution contract between Gap and Gabana, whereby Gabana could purchase first-line goods

28   from Gap and then resell them in certain Middle Eastern countries.  *Id.* at *2.  Gap, however,

     required Gabana to first seek its approval before it could resell the goods, with Gap reserving the

1   right to disapprove, in its sole discretion, Gabana's request.  *Id.*  Gabana later filed suit, alleging that

2   Gap was refusing its proposals in bad faith.  Gap argued that the implied covenant was inapplicable

3   since the contract expressly provided it the right to deny any proposals.  After finding that there was

4   no breach of the express terms of the contract because the agreement gave Gap sole discretion to

5   approve or disapprove Gabana's proposals, the Court found that the implied covenant did govern

6   Gap's use of its discretion.  *Id.* at *8.  The Court reasoned that "Gap merely bargained for the right

7   to exercise 'discretion' over proposals made by Gabana; Gap did not bargain for the right to refrain

8   from approving all proposals altogether." *Id.*

9        Relying on the principles in *Carma*, *Locke*, and *Gabana*, the Court finds that the implied

10  covenant governs Defendants' discretion in force-placing insurance.  Although Defendants have the

11  right to set the scope and extent of hazard insurance coverage—and explicitly warn that FPI may be

12  "significantly" more expensive than coverage on the open market—the Plaintiffs here have stated a

13  claim under the implied covenant that Defendants abused this discretion by acting in bad faith and

14  outside the reasonable expectations of the parties.  Whether Defendants' acts were done in bad faith

15  and not within the reasonable expectations of the parties is a question of fact that cannot be decided

16  at the pleading stage.  *See Gabana*, 2008 WL 111223 at *8; *Locke*, 57 Cal. App. 4th at 367.

17  Accordingly, Defendants' motion to dismiss the California Plaintiffs' breach of the implied covenant

18  claim is denied.

19       For the New Jersey Plaintiff, a similar outcome results.  Under New Jersey law, even when a

20  party has acted consistent with the contract's literal terms, the implied covenant allows a court to

21  judge whether a party has exercised bad faith or ill motive in carrying out discretionary activities to

22  which it has been granted "unilateral authority" by the contract.  *See Wilson*, 168 N.J. at 251.  Thus,

23  in exercising discretionary authority as expressly authorized by an agreement, if a party does so

24  "arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from

25  receiving its reasonably expected fruits of the contract," the party taking the action may breach the

26  covenant.  *Id.* at 251.  A breach of the good faith obligation must include a finding of improper

27  motive: "Without bad motive or intention, discretionary decisions that happen to result in economic

28  disadvantage to the other party are of no legal significance."  *Id.*

The Court interprets the breach of the implied covenant claim, as it relates to the New Jersey Plaintiff, to be pled in the alternative to her breach of contract claim based on a breach of an express term of the contract. *See Wade*, 172 N.J. at 344-45 (holding that there can be no separate breach of the implied covenant where there is a breach of the contract's express terms). Based on the allegations in the FAC, the Court cannot conclude, as a matter of law, that the Defendants did not breach the implied covenant with respect to the New Jersey Plaintiff.

**E.      Whether Plaintiffs State a Viable UCL claim**

Defendants seek to dismiss Plaintiffs' Cal. Bus. & Prof. Code § 17200 ("UCL") claim on three grounds: 1) Plaintiffs are unable to establish "unlawful" conduct since their RESPA claim fails as a matter of law; 2) Plaintiffs have not pled their claim under the "fraudulent" prong with particularity, nor can they demonstrate that members of the public are likely to be deceived by Defendants' conduct; and 3) Plaintiffs cannot satisfy any of the tests that California courts use to evaluate whether conduct is "unfair" under the UCL. The Court concludes that Plaintiffs' state a UCL claim under the unfair prong.

**1.      Background Law**

**a.      Standing**

A claim for unfair competition under the UCL may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). Consequently, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct . . . ." *Id.* at 326. However, a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* "'Reliance' as used in the ordinary

United States District Court
For the Northern District of California

36

United States District Court

For the Northern District of California

1  fraud context has always been understood to mean reliance on a statement for its truth and accuracy.

2  It follows that a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action

3  based on the truth or falsity of a defendant's statement, not merely on the fact it was made." *Kwikset*

4  *Corp.*,51 Cal. 4th at 327 n. 10.

5          Although *In Re Tobacco* concerned a claim only under the fraudulent prong, it has been held

6  that, under any prong, a UCL claim that is based in fraud must be supported by allegations of

7  reliance in order to properly be pled.  *See Kwikset Corp.*, 51 Cal. 4th at 326 (finding *In Re Tobacco*'s

8  reliance requirement apposite to plaintiff's claim under the unlawful prong alleging

9  misrepresentation and deception); *Carney v. Verizon Wireless Telecomm., Inc.*, 2010 WL 1947635,

10  at *3 (S.D. Cal. May, 13, 2010) ("[F]or UCL claims . . . the plaintiff must show actual reliance

11  regardless of whether the claim arises under the 'unfair,' 'unlawful' or 'fraudulent' prong of the

12  UCL."); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *8 (N.D. Cal. Sep. 1, 2010) (Patel, J.)

13  ("Since *Tobacco II*, at least one California Court of Appeal and one federal district court have held

14  that a plaintiff must plead 'actual reliance,' even if their claim arises under the unlawful or unfair

15  prongs, so long as the pleadings assert a cause of action grounded in misrepresentation or

16  deception.").

17                          **b.      UCL Violation**

18          The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

19  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To establish a violation of the

20  UCL, a plaintiff may establish a violation under any one of these prongs.  To state a cause of action

21  based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient

22  to show a violation of some underlying law.  *People v. McKale*, 25 Cal. 3d 626, 635 (1979).

23          "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only

24  requires a showing that members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal.

25  App. 4th 608, 618 (1996).  Although fraud is not a necessary element of a claim under the UCL,

26  where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course

27  of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in

28  fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)" of the

Federal Rules of Civil Procedure.  *Kearns v. Ford Motor, Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

1    (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  To satisfy Rule

2    9(b), the plaintiff must include "the who, what, when, where, and how" of the fraud.  *Vess*, 317 F.3d

3    at 1106 (citations omitted).  "The plaintiff must set forth what is false or misleading about a

4    statement, and why it is false."  *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  A

5    claim for fraud must be "specific enough to give defendants notice of the particular misconduct

6    which is alleged to constitute the fraud charged so that they can defend against the charge and not

7    just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

8    1985).

9           Finally, while there is disagreement among California courts regarding the definition of

10   "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo*

11   explains:

12          In consumer cases, such as this, the California Supreme Court has not established a definitive
             test to determine whether a business practice is unfair.  *Drum v. San Fernando Valley Bar*
13          *Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010).  A split of authority has
             developed among the California Courts of Appeal, which have applied three tests for
14          unfairness in consumer cases.  *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.

15          The test applied in one line of cases requires "that the public policy which is a predicate to a
             consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to
16          specific constitutional, statutory, or regulatory provisions."  *Drum*, 182 Cal.App.4th at 256,
             106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255,
17          1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th
             at581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th
18          845, 854, 128 Cal.Rptr.2d 389 (2002).
             . . .
19
             A second line of cases applies a test to determine whether the alleged business practice "is
20          immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and
             requires the court to weigh the utility of the defendant's conduct against the gravity of the
21          harm to the alleged victim."  *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing
             *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595,
22          101 Cal.Rptr.3d 697)).
             . . .
23
             The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the
24          Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the
             consumer injury must be substantial; (2) the injury must not be outweighed by any
25          countervailing benefits to consumers or competition; and (3) it must be an injury that
             consumers themselves could not reasonably have avoided."  *Drum*, 182 Cal.App.4th at 257,
26          106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho
             v. Automobile Club of S. Cal.*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770
27          (2006)).

28   2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011).

**United States District Court**
For the Northern District of California

2. **Application of Law to Facts**

a. **Unlawful Conduct**

In order to maintain a claim under the UCL based on unlawful conduct, a plaintiff must allege facts sufficient to establish a violation of some law. In their complaint, Plaintiffs allege that Defendants' violation of RESPA serves as the basis for their UCL claim. As discussed above, Plaintiffs RESPA claim fails as a matter of law. Because Plaintiffs are unable to establish any underlying unlawful conduct, their UCL claim based on unlawful conduct fails to state a claim and it is accordingly dismissed.

b. **Fraudulent Conduct**

As discussed above, a plaintiff bringing a UCL claim based in fraud must plead reliance on the misrepresentations or failures to disclose in order to establish standing. Plaintiffs fail to allege reliance and their claim under the fraudulent prong is dismissed on this basis.

The Court finds that Plaintiffs' UCL claim under the fraudulent prong is grounded, in part, in fraud. Plaintiffs allege that Defendants "[m]isrepresent[] in their force-placed insurance notices that borrowers were obligated to pay for backdated insurance coverage" despite the absence of any risk of loss. FAC at ¶ 165(I). Plaintiffs further allege a lucrative scheme consisting of pre-arranged exclusive agreements between Defendants and ASIC. This scheme was kept secret from borrowers and actively concealed through notices that misrepresent Defendants' business interest in its FPI practice. Moreover, Plaintiffs concede their claim under the fraudulent prong is based in fraud when they argue in the Opposition that their claim meets the heightened pleading standard for fraud claims under Rule 9(b).

Although Plaintiffs must plead reliance in order to support their claim grounded in fraud, no Plaintiff alleges reliance based on any of the conduct that could support a claim under the fraudulent prong. Plaintiffs' claim based on fraudulent conduct is accordingly dismissed with leave to amend.

c. **Unfair Conduct**

As with the fraudulent prong, Plaintiffs must plead reliance if their claim under the unfair prong is grounded in fraud. As discussed above, Plaintiffs make no allegation of reliance in relation to any conduct based in fraud. Therefore to the extent Plaintiffs' claim under the unfair prong is based on allegations sounding in fraud, the claim must be dismissed.

1    Although Plaintiffs' FAC makes considerable reference to Defendants' alleged scheme to

2 deceive and mislead Plaintiffs about its business arrangements, Plaintiffs also make allegations that

3 are not based on fraud.  The Court will therefore examine Plaintiffs' claim under the unfair prong

4 with reference only to Defendants' non-fraudulent conduct.

5    Defendants contend that Plaintiffs are unable to state a claim under any of the tests

6 developed by the California courts in evaluating a claim under the unfair prong.  The Court declines

7 to grant Defendants' Motion on the "unfair" prong of the UCL claim as to any Plaintiff because the

8 Court cannot say, as a matter of law, that Defendants alleged conduct would not violate any of the

9 three tests for unfair conduct.   Plaintiffs allege that Defendants unfairly force-placed exorbitantly

10 priced hazard insurance on their property and backdated the policy despite no damage to the

11 property or claims arising out of the property during the backdated period.  This practice was

12 disadvantageous to Plaintiffs and unsupported by any apparent reason other than the fact that

13 Defendants stood to benefit financially from the high-priced, backdated policy.  Moreover,

14 Defendants' arrangement with ASIC resulted in financial gains to Defendants, at Plaintiffs' expense,

15 and created incentives for Defendants to seek policies with the highest premiums.  The Court cannot

16 say that this allegation fails as a matter of law.

17    Defendants' contention that Plaintiffs could have avoided the alleged unfair conduct ignores

18 Plaintiffs' factual allegations.  Ms. McNeary-Calloway faced financial difficulties in the wake of her

19 husband's death and, apparently, concluded that she could no longer afford to make her hazard

20 insurance payments.  Ms. North faced similar financial hardship following a serious illness.  The

21 MacKinnons allege that their coverage lapsed due to a computer error.  The Court cannot say, as a

22 matter of law, that Plaintiffs could reasonably have avoided Defendants' alleged unfair practice.

23    **F.      Whether the New Jersey Plaintiff States a Claim under to the NJCFA**

24    Defendants argue that Plaintiff Mayko's claim under the NJCFA fails for three reasons: 1)

25 Plaintiff fails to satisfy Rule 9(b)'s pleading requirements; 2) because Plaintiff's RESPA claim fails,

26 Plaintiff has not plead any viable underlying unlawful conduct; and 3) Plaintiff has not alleged that

27 she was induced or lured into making any purchase.  The Court denies Defendants' motion to

28 dismiss Plaintiff Mayko's NJCFA claim.

United States District Court

For the Northern District of California

### 1.    Background Law

The Consumer Fraud Act ("CFA"), N.J.S.A. 56:8–1, *et seq.*, provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace.  *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011).  A consumer who can prove "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss,' is entitled to legal and/or equitable relief, treble damages, and reasonable attorneys' fees."  *Id.* (citing N.J.S.A. 56:8-19).

An unlawful practice under the CFA is the:

> use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J.S.A. 56:8-2.

CFA claims claims "'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."  *Capogrosso v. State Farm Ins. Co*, 2009 WL 3447068, at *3 (D.N.J. Oct. 21, 2009) (quoting  *Dewey v. Volkswagon*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008)).

### 2.    Application of Law to Facts

Plaintiff does not deny her CFA claim "sounds in fraud" and she is therefore required to plead with particularity as required by Rule 9(b).  Plaintiff argues that she has satisfied Rule 9(b), and the Court agrees.  Plaintiff alleges that, in connection with the loan transaction, Defendants failed to disclose to Plaintiff that when force-placing insurance they would make no effort to shop for a reasonably priced policy, that they would receive a kickback for each policy force-placed, that no effort would be made to renew the existing policies, and that the policies Defendants purchased for Plaintiffs would be backdated to cover periods during which no risk existed.  *See, e.g.*, FAC ¶¶ 2-3, 6, 65-79, 84-86, 172.  Plaintiff further alleges a scheme consisting of pre-arranged exclusive agreements between Defendants and ASIC, whereby Defendants had a financial interest in force-placing policies and purchasing policies with the highest possible premiums.  *See* FAC ¶ 172. Regarding Defendants' notice of FPI, Defendants misrepresent and fail to disclose the true nature of the reinsurance arrangement.  *Id.*  Defendants also misrepresent why FPI premiums are considerably

1    higher than normal hazard insurance premiums, failing to disclose that the premiums are inflated in

2    order to cover the kickbacks to Defendants.  *Id.*  The allegations of the scheme, and its profitability

3    for Defendants, is sufficient to plead an intent by Defendants to conceal its FPI practice.  The Court

4    concludes that these allegations are sufficient to meet the pleading requirements of Rule 9(b) and

5    adequately plead an "unlawful practice" under the CFA.[8]

6           The Court also finds that Plaintiff has adequately pled an "ascertainable loss" and a "causal

7    relationship" between the loss and Defendants' conduct.  Defendants' argument that Plaintiff must

8    also plead that Defendants' conduct lured or induced Plaintiff to enter into the loan transaction is

9    unconvincing.  The case Defendants cite in support of their argument, *Joe Hand Promotions, Inc. v.*

10   *Mills*, 567 F. Supp. 2d 719 (D.N.J. 2008), dismissed a CFA claim based on a letter threatening

11   litigation if the recipient, Taylor, did not pay a settlement related to a television licensing dispute.

12   *Id.* at 723.  The court in *Joe Hand* concluded that the alleged fraudulent conduct, embodied in the

13   letter, "did not induce Taylor to purchase anything . . . .  Thus, the fraudulent conduct alleged was

14   not done 'in connection with' the sale or advertisement of merchandise[.]"  *Id.* at 723-24.  This

15   Court, however, can find no court that has since followed *Joe Hand*'s reading of the CFA

16   requirements.  Rather, the decision appears contrary to the New Jersey Supreme Court's holdings

17   that the CFA "does not require proof of reliance."  *Lee v. Carter*, 203 N.J. 496, 522 (2010) (quoting

18   *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607 (1997)).  The Court denies Defendants' motion

19   to dismiss the CFA claim.

20          **G.     Unjust Enrichment Claim**

21                 **1.     Background Law**

22          Although there is some disagreement among California courts as to whether unjust

23   enrichment may be asserted as a stand-alone claim under California law, this Court has recognized

24   that the confusion is largely semantic.  *Nordberg v. Trilegant Corp.*, 445 F. Supp. 2d 1082, 1100

25   (N.D. Cal. 2006) (Patel, J.).  The court in *Nordberg* explained that even though California law may

26   not recognize unjust enrichment as an independent claim, such a claim may be understood as one for

27

28

---

[8]  Defendants cite to no authority for their argument that Plaintiff must plead an actual violation of a statute in order to satisfy the "unlawful practice" requirement.  Indeed, the statute itself, quoted above, explicitly defines the term, and a violation of a statute is clearly not a prerequisite to a finding of an "unlawful practice."

42

United States District Court

For the Northern District of California

1  restitution, which is recognized under California law. *Id.* Therefore, the Court considers whether

2  Plaintiff's sixth claim, styled as a claim for unjust enrichment, states a claim for restitution.

3        To state a claim for restitution, a plaintiff "must plead 'receipt of a benefit and the unjust

4  retention of the benefit at the expense of another.'" *Walters v. Fidelity Mortgage of Cal.*, 2010 WL

5  1493131, at * 12 (E.D. Cal., Apr. 14, 2010) (quoting *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th

6  723, 726 (2000)). "Even when a person has received a benefit from another, he is required to make

7  restitution 'only if the circumstances of its receipt or retention are such that, as between the two

8  persons, it is unjust for him to retain it.'" *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (quoting

9  Restatement of Restitution, § 1, cmt. c). In *McBride v. Boughton*, the court explained that

10  "restitution may be awarded in lieu of breach of contract damages when the parties had an express

11  contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride*,

12  123 Cal.App. 4th at 388. To prevail on a claim for restitution, a plaintiff need not establish bad faith

13  on the part of the defendant, so long as the recipient of the funds was not entitled to the funds. *See*

14  *Lectrodryer*, 77 Cal. App. 4th at 726.

15                    **2.      Application of Law to Facts**

16        Plaintiffs' FAC states a valid claim for restitution. Plaintiffs allege that Defendants unjustly

17  charged Plaintiffs for backdated policies and that Defendants wrongfully earned commissions and

18  kickbacks at Plaintiffs' expense.

19              **H.      Whether Plaintiffs State a Claim for Injunctive and Declaratory Relief**

20        The Defendants argue that Plaintiffs fail to state a claim for injunctive or declaratory relief

21  because those are not causes of action.

22        "[I]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must

23  exist before injunctive relief may be granted." *Camp v. Bd. of Supervisors*, 123 Cal. App. 3d 334,

24  356 (1981) (quoting *Shell Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (1942)). Additionally, "[a]

25  claim for declaratory relief is duplicative and unnecessary when it is commensurate with the relief

26  sought through other causes of action." *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *8

27  (E.D. Cal. Nov. 17, 2011). Plaintiffs' arguments for declaratory relief are entirely remedial in nature

28  rather than pertinent to a stand-alone claim. If Plaintiffs satisfy the legal standard to obtain those

forms of relief, then they will be granted as a remedy. *See* FAC at 45.

United States District Court

For the Northern District of California

**I.     Whether the NJCFA Claim Should be Dismissed for Improper Venue or Transferred to a Proper Venue**

Defendants ask that Plaintiff North's CFA claim be dismissed for improper venue or, in the alternative, transferred to a federal district court in New Jersey pursuant to 28 U.S.C. § 1404(a). The Court rejects this request.

Generally, venue must be established as to each cause of action. *Legal Additions LLC v. Kowalski*, 2009 WL 1226957, at *11 (N.D. Cal. Apr. 30, 2009) (Chen, J.) (citing *Rothstein v. Carriere*, 41 F. Supp. 2d 381, 386 (E.D.N.Y. 1999)).  However, if venue is proper on one claim, the court may find pendent venue for claims that are closely related. *Id.*; *see Beattie v. United States*, 756 F.2d 91, 100-104 (D.C. Cir.1984), *overruled on other grounds in Smith v. United States*, 507 U.S. 197 (1993).  The decision to apply pendent venue to closely related claims is a discretionary decision. *Beattie*, 756 F.2d at 103.  A court may consider the principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants in making its decision. *Id.*

Section 1404(a) allows the court to transfer an action "[f]or the convenience of parties and witnesses [and] in the interest of justice . . .  to any other district or division where it might have been brought."  Section 1404(a) displaces the common law doctrine of forum non conveniens and differs from forum non conveniens in that it allows courts to transfer actions in the interest of justice rather than having to dismiss them. *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  However, courts draw on forum non conveniens considerations when deciding whether a § 1404 transfer is appropriate. *Id.*  In particular, courts considering this issue balance the preference that is traditionally accorded the plaintiff's choice of forum against the burden to the defendant of litigating in an inconvenient forum. *Id.*  The defendant must make a strong showing of inconvenience to upset the plaintiff's choice of forum.

Defendants argue that venue is improper only as to Plaintiff Mayko's CFA claim, and the Court should decline to exercise pendent venue over that claim.  The Court finds that, even if there is improper venue as to the CFA claim, principles of pendent venue are satisfied here since the CFA claim is closely related to the California Plaintiffs' UCL claim and "it does not seem too inconvenient" to include the claim with the other claims in this action. *Id.* at 104.  Although

1   Defendants assert that the CFA claim involves activities and residents located exclusively in New

2   Jersey, Defendants have not met their burden in showing that their preferred forum is more

3   appropriate given the relatedness of the claims, the convenience of the parties and witnesses, and the

4   interests of justice.  Defendants' motion to dismiss the CFA claim based on improper venue, or

5   transfer the claim based on Section 1404(a), is accordingly denied.

6   **V.      CONCLUSION**

7        For the reasons stated above, Defendant's Motion to Dismiss is GRANTED in part and

8   DENIED in part.  An amended complaint, if any, shall be filed within thirty (30) days of the date of

9   this order.  Plaintiffs are granted leave to amend only to plead facts showing reliance on any alleged

10  misrepresentations.

11       IT IS SO ORDERED.

12

13  Dated: March 26, 2012

14

15  _____

16  JOSEPH C. SPERO

17  United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28